Law Office of Mark Fleming
1350 Columbia Street, #600
San Diego, CA 92101
(619) 300-6202
mfflaw@cox.net

**October 14, 2013**

A. Brian Albritton
United States Attorney
Vincent A. Citro
Assistant United States Attorney
Middle District of Florida
501 West Church Street, Suite 300
Orlando, Florida 32805

Re: *In re John Javilo McCullah*

Dear Messrs. Albritton and Citro:

This letter is submitted to assist you, the Attorney General, and the Department of Justice Capital Case Committee in deciding whether the death penalty should be sought for Mr. John J. McCullah.[1] We have conducted an exhaustive investigation of the facts underlying the death of Mr. Delano. The facts set forth in this letter are drawn from a number of sources, but most prominently from the trial transcripts and government sentencing documents from *United States v. Erin Sharma* and *United States v. Michael Kennedy*. Ms. Sharma and Mr. Kennedy, are, of course, the two prison guards prosecuted for intentionally placing inmate Delano into Mr. McCullah's cell with the expressed intent to have Mr. Delano assaulted by Mr. McCullah. The

---

[1] The information contained in this letter is submitted pursuant to protocol set forth in the United States Attorneys' Manual (hereinafter "DOJ Protocol"), with the understanding pursuant to Federal Rule of Criminal Procedure 11(e)(6) and Federal Rule of Evidence 410, that any statement made here cannot be used against Mr. McCullah in any way. This would include the use of this letter in any fashion in any pleading with the Court.

Page 1 of 7

EXHIBIT B
B
1 OF 7 PAGES

government's own theory—which it successfully advanced in both trials—of what led to the death of inmate Delano provides a persuasive argument for why the death penalty ought not be authorized here.

A second compelling reason to decline authorization of the death penalty is that Mr. McCullah has, over the past several years, suffered a serious degradation in his physical and mental facilities. His present condition makes its virtually impossible that this case will proceed smoothly to trial, and unlikely that the case will ever be tried at all. Mr. McCullah has complained for well over a year that the Bureau of Prisons is torturing him with a device that is hidden behind the walls of his cell. At his insistence, we have attached a letter authored entirely by Mr. McCullah to the Capital Review Committee that details the torture that he is absolutely convinced is being inflicted upon him night and day by BOP staff. As discussed below, this issue has completely consumed all of Mr. McCullah's attention and unless and until it is resolved, renders him incapable of providing adequate assistance to counsel to prepare for trial. It is our hope that after careful consideration of the history of this case and the present condition of Mr. McCullah's health, that you will conclude that seeking the execution of Mr. McCullah is a poor use of limited prosecutorial resources, inappropriate and unnecessary.

### The Sharma and Kennedy Trials.

Prison guards Erin Sharma and Michael Kennedy worked the Special Housing Unit (SHU) at USP Coleman in early 2005.[2] Both Richard Delano and John McCullah were housed in the SHU but were in different cells. Mr. McCullah occupied a single-man cell and was in the SHU for assaulting another inmate. It was widely known, according to a lengthy list of BOP inmates and guards called to testify at the respective trials of Sharma and Kennedy, that Delano's reputation as a "snitch" made him a target for both inmates and guards in the SHU who despised cooperators. This is especially true of Michael Kennedy, who, according to the government's opening statement at his trial *"hated inmates who cooperated with investigations and prosecutions"* and who *"wanted to send his own personal message about what would happen to inmates who assault correctional officers."* In fact, according to the prosecutor, Kennedy *"frequently plotted"* to have snitches assaulted by other inmates in the SHU.

---

[2]The facts in this section are drawn entirely from the transcripts from the Sharma and Kennedy trials.

EXHIBIT B

One night in late February, 2005, Delano assaulted Sharma while she was making her rounds. Delano reached through his food slot and grabbed hold of Sharma, twisting and pulling on her arm. Sharma writhed in pain, and yelled out that Delano was a dead man. Sharma's injuries included redness and bruising and she was sent home early after being cleared by the medical staff at Coleman.

In the days following the assault, Sharma and Kennedy hatched a plan to get back at Delano. Kennedy, in particular, was incensed that Delano would dare to assault a fellow SHU officer and vowed revenge. The plan was to move Delano into McCullah's cell and order that McCullah give Delano a beating. Government counsel put it in these stark terms during the government's opening statement in the Sharma trial: *"The defendant, Erin Sharma, was the puppet master and John McCullah was her puppet. For that reason, she is just as accountable for the death of Richard Delano as John McCullah is."* Similarly, during the opening statement in the Kennedy trial, the prosecutor said that: *"[I]nmate John McCullah is the third member of the conspiracy after [Kennedy] and Erin Sharma."* Despite their greater level of culpability neither Kennedy nor Sharma faced the death penalty.

### Mr. McCullah Never Intended to Kill Delano.

While the government maintained through both their trials that Sharma and Kennedy are more culpable than Mr. McCullah, it informed both juries that neither of them intended to kill Delano, but meant to have McCullah administer a non-fatal beating. If that was the reason for not pursuing the death penalty against Kennedy and Sharma, then the same logic extends to McCullah. For as with Sharma and Kennedy, the government does not believe that Mr. McCullah ever intended to kill Delano. We know this is true because during his closing argument in Kennedy's trial, government counsel said this:

> You convict Michael Kennedy because he and John McCullah and Erin Sharma conspired with criminal intent to assault Richard Delano. **They didn't intend to kill him.** No one has suggested that. And you don't need to think that. What you need to believe is that they intended harm. They intended an assault, just like any of the assaults that routinely occurred there.

Evidence from both trials support the government's position that Mr. McCullah never intended to kill Delano. First, the government meticulously proved that Mr. McCullah, the puppet, was groomed by Sharma and even more so by Kennedy to do

EXHIBIT B

exactly what they told him to do. The government proved that the SHU at Coleman was the private fiefdom of these corrupt guards, who kept the inmates in line by meting out rewards such as illegal tobacco and alcohol on the one hand, and on the other hand by inflicting severe beatings to those who disobeyed them, or who they thought might "snitch" on the guards. The trial testimony from inmates and BOP staff painted a terrifying picture of what life must have been like for the inmates in the SHU prior to Delano's death. An inmate such as Mr. McCullah could either play by the rules set up by these corrupt guards, or face the consequences of refusing to comply. That is probably why the government is so confident that Mr. McCullah never intended to kill Delano. Because he was told to beat him down, not to kill him.

And the government's position is supported by other evidence. For example, in early 2005, USP Coleman, like every other USP, was overflowing with prison knives or "shanks." One need only look at the dozens of BOP killings and serious assaults each year that are committed with ingeniously lethal home-made shanks. In a typical inmate-on-inmate intentional killing, the assailant will arm himself with a shank. The assailant will then corner the victim-inmate and deliver dozens of blows to vital areas of the body with the shank in a matter of seconds to make certain that the victim is killed before guards have the chance to stop it. Or the assailant will, after incapacitating the victim, strangle the victim. But that is not what happened here. Mr. Delano was not stabbed or strangled. In fact, he lived for 13 days after the assault before succumbing to his injuries. Mr. Delano's injuries are consistent with the government's theory that Mr. McCullah never intended to kill him.

### *The Criminal Culture Among The SHU Guards Mitigates Against Death.*

The evidence presented during the Sharma and Kennedy trials makes clear the impossible situation Mr. McCullah was placed in by the undeniable corruption of the SHU guards. According to the government's evidence, Kennedy and Sharma ruled over a dystopia in the SHU where corrupt guards despised inmates who cooperated with police, and settled scores by routinely having "enforcer" inmates administer brutal beatings to punish other inmates who displeased the guards. If an inmate such as Mr. McCullah was instructed to administer a beating to another inmate, as the government contends, what is the inmate supposed to do? The corruption described by the government was widespread and widely known by all the inmates. If an inmate refused to do as told by Kennedy or Sharma, he faced the real possibility of becoming their next victim. If an inmate decided to alert another guard, then he risked incurring Kennedy's wrath for committing the sin of "snitching." In this environment, where the guards are the criminals, informing on the guards is not a viable option, nor is refusing to comply

EXHIBIT B

with their orders. Judge Conway, when she sentenced Kennedy to 10 years, condemned not only Kennedy but the entire BOP: *[T]he atmosphere at the SHU Coleman is disturbing, to say the least. A high-end of the Guideline is needed to deter others in Mr. Kennedy's former position at Coleman and other facilities. The culture developed at Coleman cannot be blamed on Mr. Kennedy alone. This is really an indictment of the entire Bureau of Prisons.*

Given what is undisputed about the level of corruption in the SHU, and what the government presented during the Sharma and Kennedy trials, it is unjust to pursue the death penalty against Mr. McCullah; and inconceivable that any jury would impose such a punishment if the government were to seek it.

*✱ Mr. McCullah's Unaddressed Complaints of Torture.*
For more than a year now, Mr. McCullah has complained of being tortured night and day by a device hidden behind the walls of his cell. Mr. McCullah describes how BOP staff control this device by sending sharp, laser-like invisible rays that penetrate his skin and cause excruciating pain night and day.[3] Mr. McCullah details the torture in minute-by-minute logs that he has meticulously maintained for well over a year. Each week, Mr. McCullah mails the logs—which often run over 30 pages of single-spaced entries in minuscule print—to defense counsel. Combined, these logs now run hundreds of pages in length. Given Mr. McCullah's understandable preoccupation with his efforts to end his constant pain and suffering, it has become impossible to effectively involve him in defense efforts to prepare the case for trial.

✱ Recently, the defense hired a medical expert, Dr. George Woods, to examine Mr. McCullah. Dr. Woods concluded that Mr. McCullah has had a long history of serious medical issues, including a history of head trauma, physical evidence of which is visible from brain imagery scans conducted in the 1990s, and seizures. Dr. Woods has concluded that Mr. McCullah's condition is not due to malingering, and that he is not exaggerating his suffering. Dr. Woods has concluded that Mr. McCullah's complaints of being tortured must be immediately investigated in a serious manner. Upon his advise, the defense is now arranging for Mr. McCullah to undergo new brain imaging at the University of Pennsylvania Medical Center to see if there is any recent physical

---

[3] At Mr. McCullah's insistence, we are submitted with this letter a personal letter from Mr. McCullah to the Capital Review Committee.

EXHIBIT
B

evidence of damage to his brain.

Mr. McCullah has demanded that BOP staff investigate his claims of torture to no avail. The medical staff at USP Lewisburg is well aware of his complaints but have done nothing to alleviate his suffering. In fact, the medical staff has inexplicably cut-off medication that Mr. McCullah has long been prescribed to prevent seizures and to address a decades-long bipolar disorder. Since having his medication cancelled, Mr. McCullah has suffered several grand mal seizures that have left him convulsing on his cell floor. His bi-polar condition has also worsened and he has lost over 60 pounds.

It is clear to counsel that unless and until Mr. McCullah's complaints of being tortured by BOP staff are investigated and addressed, he is in no condition to provide us with even the minimal level of assistance the law requires for a defendant to legally be permitted to face trial.

### *Authorization Is Not Consistent With BOP Protocol.*

The DOJ Protocol contemplates that the death penalty will be authorized in only the most aggravated potential capital cases, and only when any aggravating circumstances sufficiently outweigh the mitigation circumstances, and only where the authorization promotes national consistency in prosecutions throughout the United States.[4] Here, there are no aggravating circumstances that sufficiently outweigh the mitigating circumstances, and seeking death here would be inconsistent with prosecutions of similar cases (and of many, many cases with greater aggravating factors present) where the death penalty was not authorized. Of course any question, doubt, or ambiguity about the presence or weight of any aggravating or mitigating factor should be resolved in favor of Mr. McCullah, and against seeking the death penalty.[5] Examples of BOP homicide cases of similar or greater aggravation that either were not authorized for the death penalty are legion. And none of these cases, so far as we have been able to determine, involve the active participation of corrupt guards who orchestrated the assault leading to the victim's death.

It seems clear that the Department of Justice's own internal guideline to seek nation-wide uniformity in the authorization process would be violated if it sought

---

[4] DOJ Protocol "Standards for Determination" § 9-10.130.

[5] DOJ Protocol "Standard for Determination" § 9-10.130C.

EXHIBIT-
B

death for Mr. McCullah. The death penalty is rightfully reserved for the worst of the worst. Less than 20% of BOP killings are authorized, and only a small percentage of authorized death penalty cases actually result in a death sentence. The participation of the prison guards coupled with a lack of intent on the part of John McCullah to kill Delano place this case outside of the restricted category of BOP homicides for which the death penalty should be authorized.

Respectfully:

_____

Mark Fleming

~~H. Manuel Hernandez~~

Counsel for John J. McCullah

EXHIBIT-B

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: | McCullah, John J. | 03040-063 | F1-217 | USP THP
--- | --- | --- | --- | ---
 | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A– INMATE REQUEST**

On or about 8-7-2017, I arrived at USP Allenwood. Upon my arrival I became aware that FBOP STAFF is using "DIRECTED ENERGY WEAPONS" (DEW), on me (also known as less-lethal technologies also known as non-lethal weapons). Which use "Voice-to-skull" technology (V2K). FBOP staff is using this technology weapon to blast my head with electronic magnetic radiation to insert voices in my head and brutally torture me with and inflict pain all over my body inside and out along wioth sexually assaulting me in my anus, penis and testicles is called the "active denial system" (ADS), it "Emits electromagnetic radiation" (EMR) along with "ELECTROMAGNETIC FIELD" (EMF). A powerful electric current is sent down the plasma channel to incapacitated subjects. It also emits waves as in "microwaves". This technology can be adjusted for non-lethal or lethal use. It can disable people or things. With the (ADS), FBOP staff is sexually assaulting me. On or about 6-6-2019 I made PA-C; Ms. A. Edwards aware that FBOP staff is sexually assaulting me. Ms Edwards asked who and how. At that time I told her I dont know the staffs names. As I cant see them. Then I told her, FBOP staff is using the "active Denial System (ADS)", on my anus to inflict pain in and all around my asshole and making it bleed for days now. She told me it seems like hemmorrhoids. I let her know that these are not hemmorrhoids I have no flare up nowing is poping out and I had hemmorrhoids over 10 years ago. And I know when BOP is assaulting me with the (ADS).

7-22-2019 _____
DATE

CONTINUED ON PG. 2

_John J McCullah_
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

REMEDY #985730-R
1 OF 3 PAGES

EXHIBIT-B1

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

CASE NUMBER: _____

Part C  RECEIPT

# REMEDY
# 985730-R1
2 OF 3 PAGES
EXHIBIT- B1

Continuation Page 2

Ms. Edwards them, proceeded to tell me that the FBOP dont have the (ADS) that only the military has weapons like that. So at that time I showed her a FOIA I filed with the FBOP and the FBOP admitted to having the (ADS). She told me that doing so didnt matter. She insisted FBOP dont have the (ADS), so I could not be being sexually assaulted with the (ADS). Then I told her how they are burning and making me itch all over the crack of my ass and cheeks. All over my balls and up to my penis along with inflicting pain all over my private parts. She told me she would give me something for hemmorhoids. Ms. Edwards never did anykind of an ewxamination on my anus, penis, or testicles. Nor did any other medical staff member not even look at my anus. By BOP policy Ms. Edwards should have reported the sexual abuse/ assault. I did what I was told to do and immediatley reported it to medical staff because I did not feel safe reporting it to guards. The FBOP states it has a zero tolerance policy on any kind of sexual abuse/assault. Theyt even have a DOH Sexual Abuse Reporting Mailbox. But in the MHU in 4-A there is no box. From 6-6-19 up to 6-18-19 I let PA-C A. Edwards know the sexual abuse is still going on and it only got worse bleeding of the anus along with the burning, itching, and inflicting pain all over my private parts. Still she did not do any kind of examination. Then on 6-18-2019, the sexual assault got alot worse, so I seen counselor Bowersox. She gave me some l;egal copies. I asked her to make for me. She gave them to me then I told Ms. Bowersox about the sexual assaults. She asked me by who and I told her by FBOP staff with the (ADS). She told me she didnt know what the "active denial system" is. So at that time I told her I just had her make copies about the (ADS). FBOP admitted to having it in a FOIA I filed. She read the FOIA then she told me she had to go report the sexual abuse to the LT. and Dr. Lada, Program Coordinator. Not long after that, Dr. Lada came in to the class romm and had staff clear the class room then we had a conversatio about the use of the (ADS) and sexual assaults. I alsop let Dr. Lada know the (ADS) was being used as the weapon.I let her know its been going on for weeks. The sexual assaults & using the (EMF) and microwaves to traumatize me brutally sexually assaulting me. I let her know their using it on my anus making it bleed, itch, burn and inflict pain all over my asshole, the crack of my ass, balls and penis. I even let her know how they make my penis hard and even ejacjalate me with the use of the (ADS) on my penis, its killer pain. She asked me if I told other staff members about this. I told her PA-C A. Edwards. But I did not tell Ms. Edwards about FBOP staff using the (ADS) on me to make my penis hard and make me ejackulate. She asked how come I didnt tell Ms.Edwards about that part. I told her I did not feel right talking about it. I told Dr. Lada also about how BOP staff is making me hear voices with the use of the (ADS) on me.

I know that at least one method of voice to skull transmission, using microwave pulses much like radar, is not particularyly new. The (ADS) emits microwave puleses and has the capabilities to transmit voices with low or high frequencies. (V2K) as I know also has the capabilities to induce or manipulate my thoughts and dreams and it also deprives me of sleep. Its not new to me, FBOP staff has been brutally torturing me with the use of the (ADS)for years now. The sexual assaults did not just start its been going on for years now. Off and on. BOP Staff denied having the (ADS) and would pass me off as being crazy when I would tell them their using (DEW) on me. Most still do lie and sayFBOP does not have any (DEWs) oR the (ADS). But like I been saying and known FBOP in fact has DEW's and the (ADS) as I know they "FBOP STAFF" adjust this weapon for much more then non-lethal use. It only takes a turn of a knob like you turn up the sound on a radio. They can and do inflick pain all over my body inside and out. Pain I can deal with some that's unbearable. Some pain is so bad I wish you (FBOP) would just kill me and stop brutal assaults. I know for a fact FBOP staff intentions are to brutally torture and kill me in time with the use of the (ADS) on me as we all know the use of this weapon can give me cancer or a heartattack. I even have heart damage from the use of the (ADS) on my heart. The criminal culture among some of the guards that work for the FBOP has to be stopped. Its not right for any one to use (DEW) or the (ADS) to torture, assault, traumatize and use humans as gunnie pigs.

RECEIVED
USP Terre Haute

JUL 26 2013

REMEDY
# 989730-R1
EXHIBIT-B1
3 OF 3 PAGES

Continuation Page 3

I know the mass majority of real american citizens would be outraged and would want justice passed out to the corporate FBOP staff that are using these weapons to torture and even kill other "humans". The use offx of the ADS on my balls gave me cyst on both my balls. I got them removed and now I have more cyst on my balls from FBOP staff using DEW and ADS on them. Even here at Terre Haute all night long they are using ADS on my balls, killer pain also inflicting pain all over my body. Ill file on Terre Haute soon. I also have cyst on my stomach and two on my brain from the use of DEW on them. also with the use of DEW and the ADSheats up my body inside and out. They pinpoint one part of my body or heat it all up and even give me a fever also they do the same but make it dx cold. Also when I was in Lewisburg USP they heated up my BACK burning pain but it ripped open all over the top part of my back and got infected. I had to go to medical daily to get the ripped skin cleaned and bandaged everyday. Not burn the skin itself but it did rip it open. The pain was excruciati Also I have little cyst all over my face from the use of the ADS on it.Its a fact that death or severe heart problems may occur from the use of the ADS on human beigs. There is plenty of evidence that electromagnetic weapons like the ADS have effects on the brain. I have severe brain damage from FBOP staff using the ADS on my brain. Here are some the affects the use of the ADS has and are still having on my brian. Headaches, Dizziness, Ringing, Buzzing, and Thumpoing of the ears, sleep disruption, laid out in bed in deep hypnosis is state of mind. Dreams and thoughts that are not mind right or mine. Telling me my every xikg thought and all mmx my memories ix denial. Mood swings, anxiety, depression, fear could make me laugh, manipulation of my thoughts and emotions, smell and taste, and sight/ I have blurred vision, seeing black dots and floaters. Eyes burning and watering , eye pain flashes of bright light, itching of eyes. I even have a cyst on my occital lobe. Also I have vericorse veins on my jugular veine on my urinary vein, my balls and my legs. From the use of the ADS or DEWS on them. Also speech problems, joints popping awixx all over my body. Lost all my teeth and a lot of them was pulled out of the socket from the EMR and or the EMF. The pain was excruciating. It got so bad I pulled out some of my teeth myself because I could not see the dentist and the pain was unbearable. It was less pain and more humane for me to pull them out myself. A dog gets put down in more humane condition at a dog pund then tshe way I have bxxkxixax treated by BOP staff. Just kill me and stop the terrorist ways. Get it over with. Also irregular heartbeats, speeding and slowing of my heart. Electrocal shocks through my chest and body. There is alot more efects the use of DEW and or the ADS had on me and is having me up to date. To sum it up, body swelling, involunt. movements of my limbs, exhausting movements, exhaustion, hair turning white, thining of skin, hair falling out, mind paralysis, extreme muscle spasms and pain, passing out, blue circles around the poles of eyes, sexual stimulation . Ill xkixa stop at that.

John J McCullah

# 03040-063

DATE  7-22-2019

THE RESOLUTION TO MY REQUEST.

STOP THE USE OF All "DIRECTED ENERGY WEAPONS"(DEW) AND THE ACTIVE DENIAL SYSTEM"(ADS), ON ME. GET ME AN MRI AND (PET) SCAN ON MY BRAIN. TO SEE All THE NEW BRAIN DAMADGE THAT FBOP STAFF GAVE ME FROM THE USE OF "MICROWAVES", ELECTROMAGNETIC RADIATION"(EMR) AND "ELECTROMAGNETIC FIELD"(EMF), ON MY BRAIN. GET ME TEETH IMPLANTS. GET ME All THE MEDICAL ATTENTION I NEED.

RECEIVED
USP Terre Haute
JUL 2 6 2019



**U.S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*

*4700 Bureau Road South*
*Terre Haute, Indiana 47802*

October 2nd, 2019

To Whom It May Concern:

Inmate McCullah, John 03040-063 has been waiting for a response to his BP-229 (BP-9) remedy ID number 985730-F1 since August 18th, 2019.  I have informed the inmate to go forth with his BP-230 (BP-10) due to not receiving his response and am requesting the form to be filed appropriately looking past the lack of BP-9 response. 𝒯𝒞

Best Regards,

F-1 Counselor T. Carmicheal

MEMO
EXHIBIT-B2





**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

| ☐ Institution | ⊗ Region | ☐ Central |
|---|---|---|
| B-2   Unit | | |

# Receipt of
# Administrative Remedy

*802 -10⁷*

| Inmate Name: | McCULLAH, John | Reg. No.: | 03040-063 |
|---|---|---|---|
| Administrative Remedy No.: | 985730 -R1 | | |

Received on this __16 th__ day of __Jan__ , 2020.

_R-an / counselor_
Signature/Title of Staff

If Administrative Remedy is allowed to be resubmitted, it is due to a Unit Team staff member by _____ , 2020.

Edits received by Unit Team on this _____ day of _____ , 2020.

_____
Signature/Title of Staff

# Inmate Copy

PAGE 1 OF 1
EXHIBIT- B3

Remedy No.: 985730-F1                                    FCC Terre Haute, IN

## PART B - RESPONSE

This is in response to your Administrative Remedy receipted July 26, 2019, in which you allege you were assaulted at another facility with military grade machines. For relief, you request the use of such equipment to be stopped and medical attention given for damage from the machinery.

All staff are held to a high standard of treating inmates fairly, impartially, and humanely. Mistreatment of inmates is not tolerated. As these allegations were made in regards to staff at another facility, the allegations will be forwarded to the appropriate institution for further investigation. However, you will not receive information regarding the outcome of any staff investigation.

Should you continue to experience medical problems stemming from the alleged incidents, you are encouraged to submit a sick call for further evaluation.

Therefore, this response to your Request for Administrative Remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, North Central Regional Office, Federal Bureau of Prisons, 400 State Avenue, Tower II, Suite 800, Kansas City, Kansas 66101. Your appeal must be received within 20 calendar days of the date of this response.

_12·4·19_
Date

_____
T. J. Watson, Complex Warden

EXHIBIT-D B4
B4

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __MCCULLAH, JOHN J__    __03040-063__    __F-1__    __USPTH__
　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　REG. NO.　　　　UNIT　　　INSTITUTION

**Part A - REASON FOR APPEAL**    I AM APPEALING A NON-RESPONSE OF AN ADMINISTRAT[IVE]
REMEDY (BP-9). PER POLICY, A NON-RESPONSE IS TO BE CONSIDERED A
DENIAL WHICH PERMITS ME TO PROCEED TO A BP-10 APPEAL. A BP-9
WAS SUBMITTED ON 07/12/19 WHICH WENT UNRESOLVED. A SUBSEQUENT
BP-9 WAS SUBMITTED ON 07/22/19 (REMEDY ID # 985730, SEE ENCLOSE[D]
COPIES OF THE BP-9 COMPLAINT).

　　THE WARDEN'S RESPONSE WAS DUE ON 08/18/19 AND HAS LONG SINCE
PASSED. A NON-RESPONSE ENTITLES ME TO PROCEED TO THIS APPEAL IN
THE ADMINISTRATIVE REMEDY PROCESS. PLEASE RESPOND TO MY
LEGITIMATE COMPLAINT FOR THE RECORD.

__11/05/19__　　　　　　　　　　　　　　_John J McCullah_
　　DATE　　　　　　　　　　　　　　SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
NOV 12 2019
REGIONAL DIRECTOR'S OFFICE
NORTH CENTRAL REGION

EXHIBIT-B5

_____
DATE
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

**Part C - RECEIPT**

_____
REGIONAL DIRECTOR

CASE NUMBER: __985730-1__

CASE NUMBER: _____

Return to: _____
　　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　　REG. NO.　　　　UNIT　　　INSTITUTION
SUBJECT: _____

_____　　　　　　_____
DATE　　　　　　　　　　　　　　SIGNATURE, RECIPIENT OF REGIONAL APPEAL　　PAGE-2

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: McCULLAH   JOHN   J        03040-063      B-2      USP TERRE HAUTE
　　　 LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL** ON 12/12/2019 I RECEIVED A RESPONSE TO MY ADMINISTRATIVE REMEDY #985730-F1 PART-B, BY COUNSELOR R. ORR. THE DATE ON IT IS 12/4/2019, I RECEIVED THIS ON 12/12/19 NOT 12/4/19. See ATTACHMENT EXHIBIT-A. ON 11/5/19 I SENT A REGIONAL ADMINISTRATIVE REMEDY APPEAL BP-10, TO THE NORTH CENTRAL REGIONAL OFFICE, SEE EXHIBIT-B. DATE RECEIVED 11/12/19. RESPONSE DUE DATE 12/12/19. I DID NOT RECEIVE A RESPONSE FOR MY BP-10 APPEAL, INSTEAD I RECEIVED A RESPONSE TO THE NON-RESPONSE AR-BP-9. PER POLICY, A NON-RESPONSE IS TO BE CONSIDERED A DENIAL WHICH ENABLES ME TO PROCEED TO THE BP-10. WHICH I DID DO. A BP-8 WAS SUBITTED ON 7/12/19 WHICH WAS UNRESOLVED. A SUBEQENT BP-9 ~~WAS SUBMITTED~~ (# 985730-F1) ON 7/22/19. WARDEN'S RESPONSE WAS DUE ON 8/18/19 WHICH HAS LONGED PASSED. A NON-RESPONSE ENTITLES ME TO PROSEED IN THE AR PROCESS. I SUBMITTED THE APPROPRIATE COPIES OF THE BP-9'S AND 4 COPIES OF A MEND COUNSELOR T. CARMICHAEL GAVE ME. SEE EXHIBIT-C. NOW THAT I RECEIVED A RESPONSE TO THE BP-9 ON 12/12/19 AND NOT THE BP-10 I'LL SUBMIT THIS NEW BP-10 APPEAL. I'M APPEALING BECAUSE I'M DISSATISFIED WITH THE RESPONSE BY WARDEN WATSON ABOUT MY BP-9 AND I WOULD LIKE TO RESPOND TO WARDEN T. J. WATSON'S RESPONSE. MR WATSON CALLS THE "WEAPON" THAT FBOP STAFF USED ON ME AND THAT THEIR STILL USING ON ME A "MILITARY GRADE MACHINES" IN FACT ITS NOT CALLED A MACHINE AS MR WATSON KNOWS, LETS NOT TRY TO DOWN PLAY THIS "WEAPON" CALL A SPADE A SPADE. AS MR. WATSON KNOWS THIS "DIRECTED ENERGY WEAPON" (DEW), ORIGINATED WITH THE JOINT NON-LETHAL "WEAPON" ~~SOTWEONS~~ PROGRAM, (JNLWP), AND FBOP OBTINED THIS WEAPON CALLED THE "ACTIVE DENIAL SYSTEMS" (ADS), FROM THE DEPARTMENT OF DEFENSE (DOD) DISPITE THE NAME THIS WEAPON CAN BE ADJUSTED FOR LETHAL USE, MY ALLEGATIONS AND COM-PLAINTS OF BEING ASSAULTED AND TORTURED BY FBOP STAFF WITH THE (ADS) SHOULD

12-17-2019            "SEE ATTACHMENTS"         _John J McCullah_
　 DATE                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
DEC 23 2019
REGIONAL DIRECTOR'S OFFICE
NORTH CENTRAL REGION

EXHIBIT- BG
1 OF 2 PAGES

_____              _____
　 DATE                              REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 1009334-4

**Part C - RECEIPT**
　　　　　　　　　　　　　　　　　　　　　　CASE NUMBER: _____

Return to: _____
　　　　　 LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION
SUBJECT: _____

_____              _____
　 DATE                              SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN                    PRINTED ON RECYCLE PAPER                    BP-230(13)
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　JUNE 2002

ATTACHMENT

BE IMMEDIATELY INVESTIGATED IN A SERIOUS MANNER. ALSO Mr WATSON CLAIMS THAT FBOP STAFF ARE HELD TO A HIGH STANDARD OF TREATING INMATES FAIRLY, IMPARTIALLY AND HUMANELY; AND MISTREATMENT OF INMATES IS NOT TOLERATED. I FIND Mr WATSONS CLAIMS TO BE FABRICATED INVALID AND ARTIFICIAL. VERY PHONEY TO PUT IT NICE. IS SEXUALLY ASSAULTING A INMATE WITH ELECTROMAGNETIC RADIATION; MICROWAVES AND BEAMS IN MY ANUS, PENIS AND TESTICLES FAIRLY, IMPARTIALLY AND HUMANELY? NOT TO ME I'M THE ONE FBOP STAFF IS DOING THIS TO NOT Mr WATSON. THESE ACTS OF TORMENT AND TORTURE BY FBOP STAFF TO ME ARE VERY INHUMAN AND DOWN RIGHT CRIMINAL AND THERE BEING TOLERATED BY Mr WATSON AND OTHER FBOP MANAGEMENT. I KNOW THAT A LOT OF THE MEN AND WOMAN WHO WORK AT USP ALLENWOOD, USP TERRE HAUTE AND OTHER FBOP INSTITUTIONS ARE NO DOUBT DEDICATED PUBLIC SERVANTS AND CORRECTIONS PROFESSIONALS DOING A DIFFICULT, DANGEROUS, AND THANKLESS JOB. HOWEVER, THERE ARE SOME FBOP STAFF MEMBERS AT USP ALLENWOOD, USP TERRE HAUTE WHO BELIEVE THAT THEY ARE A LAW UNTO THEMSELVES, FREE TO ENGAGE IN ABUSIVE, OFTEN SADISIC, TACTICS TO INTIMIDATE AND PUNISH INMATES. THEY HAVE ENGAGED IN WHAT IS CLEARLY ILLEGAL CONDUCT WITH IMPUNITY FOR YEARS, IT IS DIFFICULT, IF NOT IMPOSSIBLE TO BELIEVE THAT OTHER FBOP STAFF AND, MORE IMPORTANTLY, FBOP MANAGEMENT LIKE Mr WATSON ARE NOT AWARE OF WHAT HAS HAPPENED AT USP ALLENWOOD AND HERE AT USP TERRE HAUTE, AND HAVE APPARENTLY TURNED A BLIND EYE TO THE MISCONDUCT. ALSO PUT ANOTHER WAY. THERE ARE SIMPLY TOO MANY OTHER INMATES MAKING SIMILAR CLAIMS OF ABUSE. FOR MANAGEMENT NOT TO BE AWARE OF THE ON GOING PROBLEMS. Mr WATSON USES THE WORD MACHINES. I FEEL HIS RESPONSE IS MECHANICAL AND NOT TRUE OR SINCERE. ALSO Mr WATSON STATES MY ALLEGATIONS WERE MADE IN REGARDS TO STAFF AT ANOTHER FACILITY. THATS TRUE BUT THE ABUSE AND TORTURE HAS NOT STOPED HERE AT USP TERRE HAUTE STAFF ARE STILL USING THE (ADS) ON ME TO INFLICT EXCRUCIATING PAIN ALL OVER MY BODY AND OTHER ABUSES ON ME. I'LL FILE ON THAT SOON. HERE COUNSELOR T. CARMICHAEL TOLD ME THIS AR-BP-9 WOULD BE TOOK CARE OF IN HOUSE AND NOT SENT TO USP ALLENWOOD. I FEEL ITS SAFE TO SAY ALL THIS IN HOUSE STUFF WAS ONLY A STALL TATIC. ALSO Mr WATSON STATES IF I SHOULD CONTINUE TO EXPERIENCE MEDICAL PROBLEMS STEMMING FROM THE ALLEGED INCIDENTS, THAT HE ENCOURAGE ME TO SUBMIT A SICK CALL FOR FURTHER EVALUATIONS I ALREADY DID JUST THAT. I DID SPEAK TO Dr WILSON HEAR ABOUT THE USE OF AND AFFECTS THE (ADS) HAD ON ME AND IS STILL HAVING ON ME HERE AT USP TERRE HAUTE. I ALSO LET Dr WILSON KNOW THAT THE USE OF THE (ADS), IS BEING USED ON ME HERE AND IT STARTED ON MY ARRIVAL HERE ALSO. Dr WILSON TOLD ME HE DON'T KNOW ANYTHING ABOUT THE (ADS), AND HE CAN'T HELP ME. ALSO I SPOKE TO PA MS. JOLIAN ABOUT THIS MATTER AND THE MEDICAL PROBLEMS I HAVING FROM THE USE OF THE (ADS) ON ME. MS. JOLIAN TOLD ME MY MEDICAL PROBLEMS ARE FROM OLD AGE AND NOT THE (ADS). ALSO I **SPOKE** TO 4 OR 5 DIFFERENT PHYSCOLOGIST AND THEIR INTERNS ABOUT THE USE OF THE (ADS) AND THE AFFECTS IT IS HAVING ON ME. ALL TO NO AVIAL. FROM TALKING TO NUMERIOUS FBOP STAFF AND SOME MEDICAL STAFF. I GOT THE IMPRESSION THEY HAVE NO CHOICE BUT TO TURN A BLIND EYE. I KNOW Mr WATSON DOES HAVE A CHOICE AND I FEEL HE CHOOSES TO TURN A BLIND EYE TO ALL THE TORMENT AND TORTURE THAT HIS CO-HORTS ARE INFLICTING ON ME AND OTHER HUMANS. ALSO Mr WATSON STATES HIS RESPONES TO MY REQUEST FOR ADMINISTRATIVE REMEDY IS FOR INFORMATIONAL PURPOSES ONLY. WHAT KIND OF RESPONES IS THAT? I DON'T THINK THE ADMINISTRATIVE REMEDIES WAS SET UP FOR **ONLY** INFORMATIONAL PURPOSES ONLY.

THE RESOLUTION TO MY REQUEST IS TO STOP THE USE OF THE "ACTIVE - DENIAL SYSTEM" (ADS) ON ME, GET ME A MRI AND (PET) SCAN ON MY BRAIN TO SEE ALL THE NEW BRAIN DAMADGE THAT FBOP STAFF GAVE ME FROM THE USE OF "MICROWAVES" ELECTROMAGNETIC RADIATION" (EMR) AND BEAMS ON MY BRAIN. GET ME TEETH IMPLANTS. GET ME ALL THE MEDICAL ATTENTION I NEED.

JOHN JAVILO McCULLAH #03040-063

DATE 12-17-2019

EXHIBIT 05 B6
2 OF 2 PAGES



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*

---

*Office of the Complex Warden*                    *Terre Haute, Indiana 47802*

March 12, 2020

MEMORANDUM FOR  ALL CONCERNED

FROM:              R. Orr / Counselor B2

SUBJECT:           McCullah 03040-063

I received this 03-12-2020 and gave Mr. McCullah his copy the same date.
Admin.Rem# 1001334-R1 has the date of 02-21-2020 on the rejection notice. I did not
receive the Admin Remedy on 02-21-2020.`

EXHIBIT-B7

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B – Response**

---

**Administrative Remedy Number:  1001334-R1**

---

This is in response to your Regional Administrative Remedy Appeal received in this office on December 23, 2019, in which you allege staff misconduct.  Specifically, you allege staff physically abused you with Directed Energy Weapons (DEW) and Active Denial Systems (ADS) classified as Military Grade Weapons from the Department of Defense.  For relief, you request staff discontinue the use of the ADS, and to receive an MRI, CAT scan, teeth implants, and additional medical attention you require.

The information presented in your Regional Administrative Remedy Appeal and the Warden's response, dated December 4, 2019, was reviewed.  All allegations of staff misconduct are taken seriously.  Your allegations have been forwarded to the appropriate authority for review.

Based on the above information, this response to your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.  Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.


_1-31-2020_
Date

_____
J. E. Krueger, Regional Director

EXHIBIT-B8

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: JOHN JAVIO McCULLAH    03040-063    B-2    USP TERRE HAUTE
_____LAST NAME, FIRST, MIDDLE INITIAL_____REG. NO._____UNIT_____INSTITUTION

**Part A - REASON FOR APPEAL** ON 1-16-2020 I RECEIVED A RESPONSE TO MY ADMINISTRATIVE REMEDY APPEAL #985730-R1, BP-10. I AM DISSATISFIED WITH THIS RESPONSE FROM J.E. KRUEGER, REGIONAL DIRECTOR. THE FIRST PROBLEM I HAVE WITH THIS RESPONSE IS, I RECEIVED IT ON 1-16-2020 PLEASE SEE PAGE 1 RECEIPT OF ADMINISTRATIVE REMEDY. THE RECEIVED DATE IS, 1-16-2020 SIGNED BY COUNSELOR R. ORR, PLEASE SEE PAGE 2 ~~RECEIPT OF ADMINISTRATIVE REMEDY IS RECEIVED~~ R.A.R APPEAL PART B - RESPONSE, THE DATE IS 12-13-2019 J.E. KRUEGER SIGNED AND DATED IT. I HAVE 30 DAY TO APPEAL FROM THE DATE I RECEIVED IT BACK. THE DATE I RECEIVED THE BP-10 BACK IS 1-16-2020 NOT 12-13-2019. THE SECOND PROBLEM I HAVE WITH J.E. KRUEGER RESPONSE IS THAT AFTER T.J. WATSON, COMPLEX WARDEN REFUSED TO ANSWER MY BP-9 I FILED A BP-10 ON 11-5-2019 ASKING FOR A RESPONSE TO MY LEGITIMATE COMPLAINT AND ALLEGATIONS. RESPONSE DUE DATE FOR THIS BP-10 APPEAL WAS ON 12-12-2019 PLEASE SEE EXHIBIT-B, ON 12-12-2019 I RECEIVED A RESPONSE FROM T.J. WATSON, COMPLEX WARDEN AT USP TERRE HAUTE. PLEASE SEE EXHIBIT-D AND ALSO SEE EXHIBIT-E1 AND E2. A COPY OF THE BP-9 AND EXHIBIT-D IS THE PART-B RESPONSE FROM MR. WATSON TO MY BP-9.

2-5-2020    SEE ATTACHMENTS    _Joe J. McullI_
_____DATE_____SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
MAR 24 2020
Administrative Remedy Section
Federal Bureau of Prisons

RECEIVED
FEB 11 2020
Administrative Remedy Section
Federal Bureau of Prisons

EXHIBIT- BP B9
1 OF 2 PAGES

_____DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL
CASE NUMBER: 985730-A1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
_____LAST NAME, FIRST, MIDDLE INITIAL_____REG. NO._____UNIT_____INSTITUTION
SUBJECT: _____

_____DATE_____SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

ATTACHMENT
FOR BP-10
BP-23 (13)

SO ON 12-17-2019 I SENT OUT A NEW BP-10. PLEASE SEE EXHIBIT-F
A COPY OF THE SECOND BP-10, I SENT TO THE REGIONAL DIRECTOR, SO I
COULD RESPOND TO MR WATSON RESPONSE, THE RESPONSE DUE DATE TO THIS
BP-10, EXHIBIT-F IS ON 1-22-2020. PLEASE SEE EXHIBIT-G, NOW ON 1-16-2020
I RECEIVED A RESPONSE TO THE FIRST BP-10 DATED 11-5-2019 ASKING
THE REGIONAL DIRECTOR TO PLEASE RESPOND TO MY BP-9, PLEASE SEE
PAGE 2 THE FIRST BP-10 I FILED BEFORE RECEIVING A RESPONSE TO MY
BP-9 BY MR. WATSON, NOT TO MY BP-10 DATED 12-17-2019. I'M NOT SATISFIED
WITH THIS RESPONSE BY J.E. KRUEGER REGIONAL DIRECTOR, MR KRUEGER
DID NOT ADDRESS MY COMPLAINTS FROM MY BP-10 APPEAL DATED 12-17-2019
PLEASE SEE EXHIBIT-F, BP-10. I STAND ON MY COMPLAINTS AND CLAIMS
AND WOULD LIKE A RESPONSE TO MY BP-10 DATED 12-17-2019

RESOLUTION TO MY REQUEST IS TO STOP THE USE OF THE
"ACTIVE DENIAL SYSTEM" (ADS) ON ME BY FBOP
STAFF. GET ME A MRI AND (PET) SCAN ON MY BRAIN
TO SEE ALL THE NEW BRAIN DAMADGE THAT FBOP STAFF
GAVE ME FROM THE USE OF "MICROWAVES" "ELECTROMAG-
NETIC RADIATION" (EMR) AND BEAMS ON MY BRAIN.
GET ME TEETH IMPLANTS, GET ME ALL THE MEDICAL
ATTENTION I NEED.

JOHN JAVILO McCULLAH
Joe J. McCullah
# 03040-063
DATE

EXHIBIT-B9
1 OF 2 PAGES

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: MCCULLAH    JOHN    J    03040-063    B2    USP TERRE HAUTE

       LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL** ON 3.12.2020 I RECEIVED RESPONSE TO MY REGIONAL ADMINISTRATIVE REMEDY # 1001334-R1. I'M NOT SATISFIED WITH THIS RESPONSE. I STAND ON MY ALLEGATIONS OF STAFF AND THE USE OF DIRECT ENERGY WEAPON (DEW) AND THE ACTIVE DENIAL SYSTEMS (ADS) FOR RELIEF. I REQUEST STAFF STOP USING THE ADS ON ME, AND RECEIVE AN MRI AND (PAT) SCAN, TEETH IMPLANTS, AND TO RECEIVE ALL THE MEDICAL ATTENTION I NEED.

                THANK YOU!

3-8-2020

_____        _____

DATE                        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

MAY 0 5 2020

Administrative Remedy Section
Federal Bureau of Prisons

EXHIBIT-B9

_____        _____

DATE                  GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE      CASE NUMBER: 1001334-A1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**

                           CASE NUMBER: _____

Return to: _____

       LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____        _____

DATE                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN           PRINTED ON RECYCLED PAPER           BP-231(13)
                                            JUNE 2002

Administrative Remedy No. 985730-A2
Part B - Response


This is in response to your Central Office Administrative Remedy Appeal in which you allege staff misconduct.  Specifically, you claim staff members are using electromagnetic radiation beams on your brain.  For relief, you request medical scans and teeth implants.

We reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director addressed your concerns at the time of your Request for Administrative Remedy and subsequent appeal.  Staff conduct is governed by Program Statement 3420.11, Standards of Employee Conduct, and the Bureau of Prisons takes seriously any allegation of staff misconduct, such as those you raised in this remedy cycle. We look into matters which may constitute inappropriate conduct and refer them to another component of the Bureau of Prisons for appropriate action.  The matter has been forwarded to the appropriate Bureau component for further review.

Additionally, no inmate is entitled to be advised of the results of any inquiry or any action pursued against staff.  You should also be aware such reviews may or may not include interviewing you and no inmate is entitled to be apprised of the progress, outcome, or disposition of any review of alleged staff misconduct.  Similarly, any action taken against staff, if any are deemed necessary, will not be disclosed to you.

Based on the foregoing, this response is provided for informational purposes only.


_____4/16/20_____                    _____
Date                                   Ian Connors, Administrator
                                       National Inmate Appeals


EXHIBIT- B10



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

☐ Institution   ☐ Region   ☒ Central

F-1   Unit

# Receipt of
# Administrative Remedy

| Inmate Name: | McCULLAH, John | Reg. No.: | 03040-063 |
|---|---|---|---|
| Administrative Remedy No.: | 1001334-A1 | | |

Received on this ___5th___ day of ___August___, 2019. *TC 2020*

_____ *Counselor*
Signature/Title of Staff

If Administrative Remedy is allowed to be resubmitted, it is due to a Unit Team staff member by _____, 2019.

Edits received by Unit Team on this _____ day of _____, 2019.

_____
Signature/Title of Staff

# Inmate Copy

MY REMEDYS FINISHED
ON THIS DATE AUGUST, 5TH, 2020

EXHIBIT-B11